## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ACTION SECURITY SERVICE, INC.,**

        **Plaintiff,**

**-vs-**                                **Case No.  6:03-cv-1170-Orl-22DAB**

**AMERICA ONLINE, INC.,**

        **Defendant.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR SUMMARY JUDGMENT (Doc. No. 47)** |
| **FILED:** | **January 31, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

| | |
|---|---|
| **MOTION:** | **MOTION TO STRIKE PORTIONS OF PLAINTIFF'S DECLARATIONS (Doc. No. 57)** |
| **FILED:** | **March 6, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

       This matter is before the Court pursuant to Defendant's removal of the state court complaint on diversity grounds.  Plaintiff (herein "Action"), a local alarm company, sues Defendant (herein

"AOL"), for damages it says resulted from calls received by Action on Action's toll free number from users attempting to access AOL. Action's First Amended Complaint (Doc. 21) asserts claims of civil theft, conversion and negligence. In substance, the civil theft and conversion counts assert that AOL has converted the toll-free telephone number utilized by Action in its commercial fire alarm business (herein "the Toll Free Number") for its own use and benefit. The third count asserts that AOL negligently gave out the Toll Free Number to its customers, resulting in a foreseeable business interruption loss to Action.

Defendant first moved for partial judgment on the pleadings (Doc. No. 33), which was denied by the District Court (Doc. No. 59). The instant motion for summary judgment on all counts is now at issue. The Court has reviewed the parties briefs and exhibits (Doc. Nos. 47, 48, 52, 53), the motion to strike and response (Doc. Nos. 57 and 58, with exhibits), the record and the applicable law. For the reasons set forth herein, it is **respectfully recommended** that the motion to strike be **granted, in part and denied, in part,** and the motion for summary judgment be **granted**.

### FACTUAL BACKGROUND

Although the parties disagree as to the inferences to be drawn from the facts of record, and AOL disputes certain allegations entirely, for present purposes, the general facts are summarized as follows. Robert Tingle is Action's President and sole stockholder, and he runs the small business with the assistance of his mother, Fran Tingle (Declaration of Robert Tingle; Deposition of Robert Tingle at 4, 11; Deposition of Fran Tingle at 5-8). Action uses two telephone lines: its primary line is 407-831-6003 (herein "the local number"). If a customer calls this local number and it is busy, the call automatically rolls over to Action's second line. If both lines are busy, the caller is unable to contact Action or leave a message (Declaration of Robert Tingle at paragraph 7; Robert Tingle Deposition

-2-

at 14-15).  Action also has a toll free line [1-800-279-7449 ("the Toll Free Number")] that terminates

at the local number.  Thus, a customer who calls the Toll Free Number has his call answered as if he

called the local number directly.  *Id.*

Robert Tingle's mother, Fran Tingle, works in the office and answers the phones.  After office

hours (M-F, 8:30 a.m. to 5:00 p.m.), calls go to an answering machine located in the office.  The

message on the recorder provides a 24 hour emergency number [407-695-1338].  The emergency line

is not affected by calls to the toll free line.  (Robert Tingle Deposition at 10-12, 25, 44-45).

In its Amended Complaint, Action asserts that it began receiving calls from AOL customers

on Action's Toll Free Number beginning in November 1999.  Ninety eight percent of the calls were

computers attempting to log onto the internet, and two percent were from AOL members claiming that

they were trying to reach AOL technical support (Robert Tingle Deposition at 79-80; Fran Tingle

Deposition at 10-13, 31).  Action has produced telephone bills (Exhibit B to AOL's motion for

summary judgment) which list numerous telephone calls to the Toll Free Number.  Action contends

that all of these callers are AOL members.  Although Action contacted some of the callers[1] to

determine whether they were, in fact, AOL members, Action did not contact (or attempt to contact)

all of the callers (Deposition of Fran Tingle at 9-13, 23-24, 32, 34-35).  Some of these calls originated

from a cell phone tower or a telemarketer, and it was not possible to verify who the caller was, or

whether they were an AOL member.  *Id.*

What happened next is disputed.  Action claims that it contacted AOL by telephone "probably

four or five times" between early 2000 and 2002 (Deposition of Robert Tingle at 57-59).  The first

---

[1]Plaintiff has offered certain exhibits and statements regarding these calls, which are the subject of the Motion to Strike, discussed *infra.*

call was to "a Ms. Kelly" in an administrative department.  According to Robert Tingle, he explained the problem to her and she said that she would correct the problem (*Id.* at 59-60).  No written complaint or correspondence was sent at that time to AOL, and the record contains no other evidence from any Ms. Kelly.

According to Robert Tingle, the problem continued so he called AOL back more than a year later, in 2001, but does not remember whom he talked to (*Id.* at 60-61).  In 2002, Mr. Tingle called AOL and spoke to "George" (*Id.* at 61).  There is also testimony that he called and spoke to "Robert" (Robert Tingle Deposition, at 123-135).  Mr. Tingle did not send any correspondence to AOL regarding the problem at any time, save for a demand letter sent by Action's attorney in 2003 (Robert Tingle Deposition at 63).

Upon receiving the demand letter, Robert Rupy, an AOL technical support manager, investigated the allegations (Rupy Deposition).  Action provided no details regarding the calls, save for the assertion that some AOL support persons were providing Action's number to some unidentified members (Rupy deposition at 17-22, 54; Affidavit of Bob Rupy, paragraph 4).  AOL asserts that it searched its databases and work areas and found no listings of Action's number anywhere (Rupy Deposition and Affidavit, paragraphs 5-7).

Action then provided AOL with four computer diskettes ("the disks") used by AOL members to load AOL software onto a computer.  Action asserted that Action's Toll Free Number was on the disks (Robert Tingle Deposition, at 85-88).  AOL engineers reviewed the disks and determined that Action's Toll Free Number is not on any of the disks (Affidavit of David Chladon).

AOL was assigned access number "0800 279 7449" by a British telecommunications company, for use by AOL users in the United Kingdom (Affidavit of Adam Comerford; and Exhibit

-4-

C to the motion for summary judgment).  None of the allegedly misdirected calls came from the United Kingdom (Exhibit B to the motion for summary judgment).

Action claims substantial damages, calculated as lost profits for sales it could have made, but for the fact that its phone lines were being used by the misdirected callers (Deposition of Robert Tingle, 173-188, and Deposition Exhibit 12).  However, Robert Tingle testified at deposition that he could not specify any particular lost sale or lost customer, resulting from the calls:

> Question: . . . My question to you was, are you able to tell me the name of a single person or company that is not doing business with Action Security because your phone lines were tied up with A.O.L. members?
> Mr. Pringle: Object to the form.  It's been asked and answered.  Answer it again.
> Answer: Again, I wouldn't know because the phone was tied up, and I have no way of knowing if that person went from Action to ADT and hired ADT to do a $26,000 job and we lost it just that quick.  I don't know.

(Robert Tingle Deposition at 111).

### SUMMARY JUDGMENT STANDARD

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact.  Fed. R. Civ. Pro. 56(c).  The substantive law applicable to the case determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of proving that no genuine issue of material fact exists.  *Celotex*, 477 U.S. at 323.  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party

opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

### THE MOTION TO STRIKE

Before the Court can apply the applicable law to the underlying facts, it must resolve the issues raised in the motion to strike. AOL contends that the some of the evidence proffered by Plaintiff is either objectionable hearsay or otherwise inadmissable under Rule 56, Federal Rules of Civil Procedure. Generally, inadmissible hearsay[2] "cannot be considered on a motion for summary judgment." *Macuba v. DeBoer,* 193 F.3d 1316, 1322 (11th Cir. 1999). "Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits that support or oppose summary judgment motions shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence. This rule also applies to testimony given on deposition." *Id.* at 1322-23 (citations and quotations omitted). Thus, "[t]o the extent any affidavit or deposition testimony is hearsay, it may not be considered for summary judgment purposes unless it would be admissible at trial for some purpose, e.g., the statement might fall within an exception to the hearsay rule, might not actually constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or it might be used solely for impeachment purposes (and not as substantive evidence)." *Gaston v. Home Depot USA, Inc.,* 129 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (citation and footnote omitted), *affirmed,* 265 F.3d 1066 (11th Cir. 2001).

Here, AOL has objected to three categories of Plaintiff's evidence. The first objection is to Exhibit B to Fran Tingle's Declaration, which consists of spreadsheets prepared by Ms. Tingle, as a

---

[2] Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

-6-

summary of handwritten notes of telephone calls Ms. Tingle says she made to AOL members who had called Action.  AOL objects to the exhibit, contending that it was never produced during discovery, is based on documents that themselves were never produced during discovery, violates the Best Evidence Rule, contains inadmissable hearsay, and materially conflicts with the documents that were produced.

Plaintiff's response to the motion to strike with respect to this exhibit states only that "Exhibit "B" to the Frances Tingle Declaration is a summary of telephone calls returned by Frances Tingle which was prepared by Mrs. Tingle on February 19 and 20, 2005.  Mrs. Tingle prepared this document using notes and records produced to AOL during discovery."  Specifically, in Affidavit attached to the motion response as Exhibit A, Ms. Tingle states that she used Action telephone records and her notes on such records to prepare the summary.  As noted by Defendant, however, the summary contains notations that are simply not present in the notes and logs produced in discovery (*See* Exhibits 2a, 2b, 3a and 3b to motion to strike).

Federal Rule of Evidence 1006 allows for summaries as follows: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place.  The court may order that they be produced in court."  Here, the writings upon which the summary was allegedly based are not voluminous, and, unlike the summary, have been produced in discovery and subject to examination by the parties.  This exhibit, created by Ms. Tingle after her deposition was taken and discovery had already closed, differs materially from the contents of the original logs and notes and has not been subjected to examination.

The discrepancies between the original logs and the summary also implicate the "best evidence rule." Federal Rule of Evidence 1002 establishes that an original document is required where the party presenting evidence seeks to prove the specific contents of a writing. *See Telecom Technical Services Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004). To the extent Action is attempting to substitute this summary for the actual logs and notes produced in response to a request for all documents regarding any phone calls to AOL members, the best evidence rule dictates that the logs and notes must speak for themselves. The summary should be disallowed.[3]

The second objection raised by AOL is the inclusion of hearsay in the Declarations of Robert Tingle and Fran Tingle. Specifically, AOL objects to Paragraph 23 of Robert Tingle's Declaration, wherein he states that:

> On September 30, 2004, Action received a telephone call from Jeanine Herbert, an AOL customer who called Action seeking AOL Tech services. Ms. Herbert obtained the toll free number 0800-279-7449 from AOL's website using keywords "how to fax a resume." Ms. Herbert dialed Actions's toll free number believing she was contacting AOL."

AOL also objects to paragraphs 6 through 8 of Fran Tingle's Declaration, which read:

> 6. On or about May 16, 2000, I received a call from Ms. Olga Chle Jung who resides in Waterloo, Iowa. Ms. Jung confirmed that she was having troubles with her computer and was calling a number of AOL support numbers. Ms. Jung left multiple messages for AOL on Action's Toll Free Number. Ms. Jung informed me that upon contacting AOL again, AOL technical support again provided Ms. Jung with Action's Toll Free Number as a support number. Ms. Jung eventually found out she was calling Action's Toll Free Number by calling again during a regular business day and reaching me.
> 7. On December 8, 2000, I spoke with Rich Van Dyke of Gordon Foods in Grand Rapids, Michigan. Mr. Van Dyke traced the calls through the system at Gordon Foods and traced the call back to an employee's computer trying to get online to AOL.
> * * *

---

[3]This is especially true given that some of the additional notations on the summary purport to include hearsay statements of the persons called.

8.  As stated above, the other individuals I spoke with also confirmed that the AOL disc on their computer was automatically dialing Action or that AOL technical support gave Action's toll free number to them.

The above statements meet the definition of hearsay in that they are out of court statements, offered to prove the truth of the matters asserted – namely that AOL was responsible for the misdirected calls placed by Ms. Herbert, Ms. Jung, Mr. Van Dyke, and "the other individuals I spoke with."

In response, Plaintiff does not directly address the hearsay issue, but contends that, under *Celotex,* it "need not produce evidence in a form that would be admissible in trial in order to avoid summary judgment."  Further, Plaintiff notes:

> As stated in ACTION's Response to AOL's Motion for Summary Judgment, ACTION will introduce competent evidence at trial to corroborate its claims in this litigation. This includes testimony from ACTION and AOL representatives and from nonparty fact witnesses identified in ACTION's Amended Mandatory Initial Disclosures dated October 23, 2003. ACTION will also introduce documents to corroborate ACTION's claims in this litigation.

To the extent Plaintiff contends that it can rely on rank hearsay now, as long as it comes forward with admissible evidence at trial, it is mistaken.  While the Supreme Court spoke to the *form* of evidence in *Celotex,* it made clear that a non-moving party must still rebut a motion for summary judgment, using the kinds of evidence addressed in Rule 56:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.  Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses.  Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex Corp. v. Catrett*, 477 U.S. 317, at 324.   Nothing in Rule 56 provides that a motion for summary judgment can be rebutted by declarations that are based on hearsay.  Indeed, Rule 56 states precisely the opposite, requiring that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Rule 56(e).

The objected to portions of the Declarations contain non-hearsay (Action received calls or made calls) combined with hearsay (what the caller said).  Thus, the motion to strike should be granted with respect to the hearsay, but the portions of the declarations which purport to be based on personal knowledge regarding the *act* of making or receiving a telephone call (as opposed to statements of the non-declarant) should not be stricken.  Thus, for purposes of the motion for summary judgment, the Court considers only that Action made and received telephone calls from or to the named individuals.[4]

Defendant's final objection in the motion to strike goes to pages 8-10 of Action's response to the motion for summary judgment, wherein Action contends that AOL has withheld or destroyed evidence, as only three documents were produced, and all related to AOL's investigation after receiving the demand letter.  In essence, Action argues that the lack of documents regarding AOL's alleged use of Action's Toll Free Number is "absurd" considering the "gravity of events."  No proof of this assertion is presented, save for the fact that few documents were produced.

The Court has addressed this issue previously, in denying Plaintiff's motion to compel (Doc. No. 46).  There, the Court noted that the scant production "is not grounds to infer that AOL is

---

[4]The Deposition of Olga Jung is in the record and was considered by the Court.  To the extent no depositions or affidavits of Mr. Van Dyke or Ms. Herbert are presented, the fact of the telephone call in itself, without more, is of limited evidentiary value.  The same is true of the unnamed "other individuals."

withholding evidence or has destroyed or failed to preserve evidence, as Plaintiff seems to suggest" but was "equally supportive of an inference that Defendant has no evidence to support Plaintiff's claim." The Court sees no grounds to revisit that ruling.[5] As a matter of law, Action is not entitled to an inference that documents were destroyed or withheld, on this record.

### CIVIL THEFT

Plaintiff asserts that AOL's actions amount to civil theft, codified in Florida Statutes § 772.11, in pertinent part, as follows:

> 1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Action contends that AOL violated Fla. Stat. § 812.014, which defines the crime of theft as follows:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit from the property.
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Florida courts have recognized that " a felonious intent to steal is a necessary element of proof in an action for damages based on a violation of section 812.014(1)." *Lewis v. Heartsong, Inc*., 559 So. 2d 453, 454 (1st DCA 1990); accord *Skubal v. Cooley,* 650 So. 2d 169 (Fla. 4th DCA 1995); *St. John v. Kuper,* 489 So. 2d 833 (Fla. 3rd DCA 1986). *See also Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.,* 853 F. 2d 834 (11th Cir. 1988).

---

[5]Indeed, the Court reminds Plaintiff that its own production of documents regarding the misguided phone calls included no correspondence or other documents sent to AOL by Action documenting the problem or asking for assistance prior to the pre-suit demand letter in 2003.

Applied here, the instant facts are insufficient to establish criminal intent on behalf of AOL. The record is devoid of *any* non-hearsay evidence that AOL knowingly used the Toll Free Number at all, let alone with felonious intent.[6]  Although Action conclusorily asserts that AOL provided disks which wrongfully included Action's Toll Free Number as a contact number, there is no *proof* offered, and the only record evidence on the subject (the Affidavit of David Chladon) refutes that claim.  To the extent Action relies on AOL's 0-800 number, that number, for use solely in the United Kingdom by United Kingdom users, is not identical to Action's Toll Free Number (which is a 1-800 number) and is therefore not Action's property.  There is no evidence that callers have contacted Action by dialing the 0-800 number and, to the extent any domestic caller reached Action by dialing 1-800 instead of 0-800,  Action cites no authority sufficient to render AOL liable for a third party's misdialing of a legitimate telephone number.

The only other evidence Plaintiff offers is the hearsay evidence striken above and the deposition and affidavit testimony of AOL members Olga Jung, Pam Kocian, Charles Thompson, Barry Poe, and Shirley Reece.  Mr. Thompson testified in deposition that, despite his declaration to the contrary, he had no recollection of being given Action's Toll Free Number by AOL (Thompson Deposition at 9, 24).  Ms. Reece testified in deposition that she did not recall ever receiving Action's number from AOL, nor could she state whether or not her computer actually ever dialed Action's Toll Free Number (Reece Deposition at 5, 8-12).  Mr. Poe does not recall ever calling Action's Toll Free Number (Poe Deposition at 7), guesses his computer did (*Id.* at 36), and thinks his credit card company gave him Action's Toll Free Number (*Id.* at 20, 24-5, 30-32).  Ms. Jung and Ms. Kocian testified in

---

[6]The District Court, in denying the motion for judgment on the pleadings, determined that Action's toll free number is "property" within the meaning of the civil theft statute.

deposition that they were given Action's Toll Free Number by AOL, but could not remember specifics regarding who gave the number or when it was given (Deposition of Jung at 10-11;17-20; Deposition of Kocian at 8-9; 14-15).  Thus, at best, the evidence indicates that two people were given Action's Toll Free Number by some unknown technical support person or persons at AOL, at some point in time.  There is no credible evidence that the calls allegedly made by computers were at the direction of AOL.  This is far from clear and convincing evidence that AOL, with felonious intent, stole Action's Toll Free Number.  Indeed, there is absolutely no evidence on this record from which a reasonable juror could infer intent on the part of AOL to deprive Action of the benefit of its Toll Free Number, or appropriate the number for its own use.  As Robert Tingle acknowledged, AOL received no benefit from the misdirected calls (Deposition of Robert Tingle at 55-56).  As a matter of law, AOL is entitled to summary judgment on this count as no genuine issue exists with respect to the lack of criminal intent.

***CONVERSION***

Florida courts have defined the tort of conversion as an (1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. See *Warshall v. Price,* 629 So.2d 903, 904 (Fla. 4th DCA 1993).  "Conversion" can also occur when a person who has a right to possession of property demands its return and the demand is not or cannot be met. *Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc.*, 481 So.2d 501 (Fla. 2d DCA 1985), *rev. denied*, 491 So.2d 278 (Fla.1986).  As this Court found in *United States v. Bailey,* 288 F. Supp.2d 1261, 1278 (M.D. Fla. 2003), in Florida, conversion is regarded as a possessory action.

The difficulty here is that, even if the Toll Free Number is "property"capable of being converted, the evidence does not establish that AOL "possessed" the Toll Free Number in such a way

as to constitute dominion.  There is no record of AOL calling the Number or using it to communicate

with any of its customers.  No calls placed to the Number were received by AOL.  Indeed, there is no

evidence that AOL used the Toll Free Number in any way, such as to re-direct calls from Action to

AOL.  The Number was at all times assigned to Action and all calls to the Number were received by

Action, and Action alone.  Plaintiff cites no cases establishing a cause of action for conversion of a

telephone number on similar facts.[7]  AOL is entitled to summary judgment on this count.

### NEGLIGENCE

Count three asserts that AOL is liable in negligence.  Negligence requires the following

elements: 1) the existence of a duty recognized by law, 2) failure to perform that duty; and 3) injury

or damage to the plaintiff proximately caused by such failure. *See Stahl v. Metropolitan Dade County,*

438 So. 2d 14, 17 (Fla. 3rd DCA 1983) (internal citations omitted); *Threaf Properties, Ltd. v. Title*

*Insurance Company of Minnesota*, 875 F. 2d 831, 838 (11th Cir. 1989) (setting forth the elements of

a cause of action for negligence under Florida law).  Although Plaintiff has put forth inconsistent and

unclear theories during the course of this litigation, according to the current papers, Action alleges

negligence in that "AOL has provided its customers with Action's Toll Free Number for use in

connection with AOL services" in three identified ways: 1) AOL technical support provided AOL

customers with Action's Toll Free Number, 2) Action's Toll Free Number has been fully integrated

into AOL promotional disks, and 3) AOL has posted telephone numbers on its website which have

---

[7]None of the cases relied upon by Plaintiff involved alleged conversion of a telephone number. Moreover, Plaintiff cites to and quotes liberally from *Senfeld v. Bank of Nova Scotia Trust Company (Cayman) Ltd.,* 450 So. 2d 1157 (Fla. 3rd DCA 1984) (brief at 14 and fn 23), a case involving conversion of money.  There, the Court held: "Thus, the essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal." 450 So. 2d at 1161.  As noted above, there is no evidence whatever of an intent to deprive Action of possession of the toll free number.

caused confusion among AOL customers who have dialed Action's Toll Free Number in error. *See* Plaintiff's Response Brief at 3-4.

With respect to AOL allegedly providing its customers with Action's Toll Free Number, Plaintiff has failed to ultimately identify the duty owed to *Plaintiff* and to provide evidence of how that specific duty was breached here. Assuming the record viewed in light favorable to Plaintiff may establish that Action received calls meant for AOL, that alone is not enough to establish that AOL breached an unarticulated duty to Plaintiff. Not every error is *per se* negligence. While AOL may have had a contractual duty *to its customers*, absent any reason to establish a higher duty, AOL had, at most, a general duty of reasonable care with respect to Action.

The problem here is that reasonable care must be evaluated in the context of the circumstances presented at the time the act occurred, and here, there is no evidence of those circumstances. Absent evidence of intent, absent evidence of knowledge on the part of AOL that they were giving out an incorrect number or why they were doing so, absent any evidence of the circumstances surrounding the purported giving out of the number, the Court cannot evaluate and therefore cannot conclude (and no jury could find) that AOL breached a duty owed to Plaintiff.

As for the disks alleged to contain Action's Toll Free Number, as set forth above, Plaintiff has introduced no competent evidence to rebut the Affidavit of David Chladon, who avers that Action's Number is not on the disks provided. Although Action, in its response to the motion, contends that Chladon's Affidavit should be disregarded as improper expert testimony, the Court disagrees. Whether or not Action's Toll Free Number is contained on the disks is not a matter of opinion, but, rather, a matter of fact. The disks either contain Action's Number or they do not. According to his Affidavit, Mr. Chladon is Principal Software Engineer at AOL, with the responsibilities of, among

other things, access number retrieval (Affidavit of David Chladon at 3).  Mr. Chladon avers that he

loaded the disks provided, conducted a binary file search, and Action's Toll Free Number was not on

any of the disks.  Absent any evidence[8] to the contrary, there is no genuine issue of fact as to this

matter.

The third alleged misrepresentation is not a misrepresentation at all.  Rather, Action asserts that

the 0-800 number assigned to AOL by a British telecommunications company  is "virtually identical"

to the 1-800 number, and AOL is somehow liable for the resulting "confusion."  In the first instance,

the numbers are not virtually identical – they differ in the first digit.  Moreover, as asserted by AOL

and unrebutted by Plaintiff, the number was legitimately assigned to AOL for use in the United

Kingdom.  Plaintiff cites no law for the novel proposition that the assignee of a legitimate telephone

number is liable in negligence if one of its customers misdials and reaches another number.

Even if we were to assume that the record supports the first two elements of duty and breach

with respect to any of the above, Plaintiff has failed to establish a genuine issue of material fact with

respect to the final element – proximately caused damage.  Simply put, Plaintiff has offered no

competent proof that the misdirected calls caused Plaintiff to lose opportunities to get business.  As

pointed out by AOL, Action fails to identify *any* customers, prospective customers, or jobs lost due

---

[8]Action's reliance on the Declaration of Robert Tingle as evidence of what is contained on the disks is misplaced.
In his declaration, Mr. Tingle states: "Action has received a number of AOL promotional discs from AOL customers who
confirm that Action's toll free number was dialed as an AOL access number from said promotional discs." Declaration at
paragraph 21.  This statement, which is predicated on hearsay,  does not establish that Mr. Tingle has personal knowledge
of what is on the disks.  As such, it is insufficient to counter Mr. Chladon's Affidavit.  The failure of Plaintiff to offer
competent proof of the phone number being on the installation disks in unexplained.  No arcane or esoteric knowledge is
necessary to obtain such proof if there were any.

to the misdirected phone calls. (Deposition of Robert Tingle, at 91-92, 108-111).[9]  As stated by

Florida's Third District Court of Appeal:

> Lost profits must be established with a reasonable degree of certainty and must be a
> natural consequence of the wrong. *Brevard County Fair Ass'n, Inc. v. Cocoa Expo,
> Inc.*, 832 So.2d 147 (Fla. 5th DCA 2002); *Schonfeld v. Albert Alpert & Sons, Ltd.*, 427
> So.2d 1035 (Fla. 3d DCA 1983); *Beverage Canners v. Cott Corp.*, 372 So.2d 954 (Fla.
> 3d DCA 1979). Such an award cannot be based upon speculation or conjecture. *Stensby
> v. Effjohn Oy Ab*, 806 So.2d 542 (Fla. 3d DCA 2001); *Shadow Lakes, Inc. v. Cudlipp
> Const. and Development Co., Inc.*, 658 So.2d 116 (Fla. 2d DCA 1995); *Himes v. Brown
> & Co. Securities Corp.*, 518 So.2d 937 (Fla. 3d DCA 1988).

*Sostchin v. Doll Enterprises, Inc.*, 847 So.2d 1123,1128 (Fla. 3rd DCA 2003), *review denied,* 860 So.

2d 977 (Fla. 2003) (TABLE).  The damage claim of Action is based on unsupported assumptions that

but for the time spent on the misdirected calls, other unnamed, unidentified customers would have

called with substantial, but unspecified, business.  This is a far cry from proof to a reasonable

certainty.  As a matter of law, no damage award could rest on so thin a reed.

### CONCLUSION AND RECOMMENDATION

Construing all inferences liberally in Plaintiff's favor, the record, at best, reflects that for some

reason or reasons, Action was receiving calls intended for AOL.  That alone, however, is insufficient

to establish that AOL is liable for damages, absent a showing sufficient to charge AOL responsibility

for the misdirected calls.  That showing has not been made.  For the reasons set forth herein, it is

**respectfully recommended** that the motion to strike be **granted, in part** and the motion for summary

judgment be **granted.**

---

[9]While Plaintiff does introduce the deposition testimony of contractor Phillip David Bailey as support for its
assertion that  its customers could not always contact Action, there is no evidence that the failure to reach Action was due
to AOL members tying up the phone.  Moreover, Mr. Bailey did not stop doing business with Action as a result of the
communication difficulties.  (Deposition of David Bailey 9-14, 17-18, 24-32.)

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 27, 2005.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy